UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILIO TORRES,

       Plaintiff,

                                                        Case No. 1:18-cv-547
v.                                                        Hon. Paul L. Maloney

VITALE'S ITALIAN RESTAURANT, INC.,
SALVATORE VITALE, and
BELINDA PIERSON,

       Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Plaintiff, Emilio Torres, has filed a "First Amended Collective Action Complaint" against defendants for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. First Amend. Compl. (ECF. No. 8). This is one of three lawsuits filed by plaintiff related to his employment at defendants' restaurant. *See Emilio Torres v. Salvatore Vitale, Belinda Pierson, Agostino Vitale, Angela LoGuidice-Polizzi, and Guiseppe Polizza*, 1:18-cv-766 (alleging that defendants engaged in a criminal enterprise for racketeering) and *Emilio Torres v. Vitale's Italian Restaurant, Inc. and Salvatore Vitale*, 1:18-cv-1088 (alleging retaliation under the FLSA). The Court entered judgment against plaintiff in the racketeering lawsuit. *See Torres*, 1:18-cv-766 (Opinion, Order and Judgment (ECF Nos. 29 and 30)). The other two lawsuits remain pending. This matter is now before the Court on "Plaintiff's 29 U.S.C. §216(b) motion for conditional certification of collective action" (ECF No. 22), which has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

1

## I. The Amended complaint

### A. Plaintiff's allegations

Plaintiff set forth the following allegations in his amended complaint. Plaintiff identified defendants as: Vitale's Italian Restaurant, Inc. (a Michigan Corporation whose principal place of business is located at 834 Leonard N.E. Grand Rapids, Michigan); Salvatore Vitale (owner of the restaurant and responsible for its day-to-day operation); and Belinda Pierson (general manager of the restaurant and responsible for payroll and time cards). *Id*. at PageID.74-75. Plaintiff is a former employee who worked at the Leonard Street restaurant during three different times: in 2010; from May 2012 through June 2014; and, from March 2017 until he was fired on May 7, 2018. *Id*. at PageID.74, 76-77.

Plaintiff was employed "to perform general labor" and worked about 75 hours per week. *Id*. at PageID.77. As part of his job, plaintiff "would prepare food, plate food, run the dishwasher, prep cook, janitorial work, cleaned floors and walls, and performed maintenance of kitchen equipment among other duties." *Id*. Plaintiff and other "similarly situated" employees were not paid an "overtime premium" (time and a half for hours worked in excess of 40 hours per week). *Id*. at PageID.77-79. In addition, they were required to use a second time card to record any hours worked in excess of 40 hours. *Id*. Defendant Pierson would issue the employees payroll checks for their regular hours worked as reflected on the first time card, and pay them in cash for hours worked in excess of 40 hours per week as reflected on the second time card. *Id*. at PageID.79-80. Pierson also instructed employees to bring their second time card to her home on Sundays "to avoid any possible detection should a state or federal agency come to do an audit of the business." *Id*. at PageID.80. According to plaintiff, defendants used the two time card system

2

"for the sole purpose of circumventing Defendants' obligations under the FLSA and the Internal Revenue Code." *Id*. at PageID.79.

### B.     Plaintiff's claim

Plaintiff's First Amended Complaint consists of one count:

> Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.  Failure to [sic] statutory overtime wage[.]

PageID.82 (emphasis omitted).   The gist of plaintiff's claim is that defendants violated the FLSA by adopting a "company wide policy and practice not to compensate Plaintiff and those in similar situated [sic] time and one half for all hours worked over forty (40) in a single workweek." *Id.* at PageID.79.  Plaintiff seeks relief including: certification of this case as a collective action under 29 U.S.C. § 216(b); designation of plaintiff as the representative class member; designation of plaintiff's counsel as class counsel; declaring that defendants willfully violated the FLSA; equitable tolling of the statute of limitations beyond the time set forth in the statute; and awarding the class members unpaid wages, liquidated damages, costs,  and reasonable attorneys' fees. *Id*. at PageID.83-84.

### C.     Plaintiff's motion for conditional certification

Plaintiff has provided three different definitions of the proposed class for conditional certification.  Plaintiff's amended complaint defined "the class of similarly situated Class Members" as:

> Current and former employees of Vitale's Italian Restaurant, Inc. and Salvatore Vitale who were not paid time-and-a-half for hours worked in excess of 40 hours during a workweek.

Amended Compl. at PageID.82 (italics omitted).

Next, plaintiff's motion and proposed Notice of Right to Join Lawsuit asks to certify a different class of employees, i.e., employees of Vitale's Italian Restaurant, Inc., who worked at the restaurant on Leonard Street after May 15, 2015:

> All individuals who worked or are working at Vitale's Italian Restaurant, Inc., d/b/a Vitale's Grand Rapids located on Leonard Street who were not paid time and a half (overtime) for any hours worked beyond 40 hours in a week at any time after May 15, 2015.

Motion (ECF No. 22, PageID.153) (italics omitted); Proposed Notice of Right to Join Lawsuit (ECF No. 23-2, PageID.308) (emphasis omitted).

Finally, plaintiff's memorandum filed in support of the motion refers to the employees of all of the defendants (i.e., Vitale's Italian Restaurant, Inc., Salvatore Vitale, and Belinda Pierson) before the filing of the complaint on May 15, 2018:

> All of Defendants' current and former employees who are not or were not paid time-and-a-half for hours worked in excess of 40 hours during a workweek before the filing of this Complaint up to the present.

Memorandum (ECF No. 23, PageID.180) (italics omitted).

### III. Discussion

#### A. Legal Standard

This Court previously set forth the standard of review for conditional certification of a collective action under the FLSA in *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242 (W.D. Mich. 2011), which provides in pertinent part:

> The FLSA requires covered employers to pay their nonexempt employees at a rate of time-and-a-half for all hours worked each week over forty hours. 29 U.S.C. § 207(a)(1); *Whisman v. Ford Motor Co.*, 157 Fed.Appx. 792, 796 (6th Cir. 2005) (unpublished). When an employer violates this provision, the FLSA authorizes an employee to sue his or her employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A suit brought under § 216(b) is called a "collective action" and is distinct from a "class action" suit brought under Fed. R. Civ. P. 23. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). FLSA collective action suits are not subject to the

numerosity, commonality, typicality, and representativeness requirements of class action suits. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). Also, unlike class actions where plaintiffs may opt out of the suit, in a collective action, putative plaintiffs must opt into the suit. *Id*. at 583. "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *Id*.

For the action to proceed as a collective action, the court must be satisfied that all the plaintiffs are "similarly situated." *See* 29 U.S.C. § 216(b); *O'Brien*, 575 F.3d at 583. Unfortunately, the FLSA does not define the term "similarly situated," or provide any guidance as to how the term should be interpreted. *See O'Brien*, 575 F.3d at 584. The Sixth Circuit Court of Appeals has declined "to create a comprehensive criteria for informing the similarly situated analysis." *Id*. at 585; *see Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259–60 and n. 38 (11th Cir. 2008) (declining to establish a formal approach to determining whether plaintiffs are similarly situated and noting other circuit courts have taken the same approach). "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien*, 575 F.3d at 584. A district court's certification rulings in an FLSA action fall within the court's discretion. *Id*. (adopting the Eleventh Circuit's approach to review collective-action certification decisions for abuse of discretion).

Federal courts typically follow a two-stage certification process for determining whether all plaintiffs are similarly situated. *See id*. at 583; *Lindberg v. UHS of Lakeside, LLC*, 761 F.Supp.2d 752, 757 (W.D. Tenn. 2011); *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010). The first stage has been referred to as the "notice stage" or "conditional certification stage." The first stage takes place at the beginning of discovery. *Comer*, 454 F.3d at 546. "The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in." *Lindberg*, 761 F.Supp.2d at 757-58. The second stage occurs after all the opt-in forms have been received and discovery has closed. *Comer*, 454 F.3d at 546. The second stage, sometime referred to as "final certification," "is typically precipitated by a motion for 'decertification' by the defendant usually after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F.3d at 1214 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)); *see O'Brien*, 575 F.3d at 583-86 (affirming the district court's decertification of the collective action).

Plaintiffs' motion requests conditional, not final, certification. The burden on the lead plaintiffs in this first stage is "fairly lenient." *Hipp*, 252 F.3d at 1214 (quoting *Mooney*, 54 F.3d at 1214); *Wlotkowski*, 267 F.R.D. at 217 (citing *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004)). The evidentiary standard is low because, at this stage in the suit, very little discovery, if any, has occurred. Because Plaintiffs were afforded limited discovery, they may not rest on the unsupported allegations in their complaint, but must put forth a "modest factual showing" that the putative plaintiffs are similarly situated. *Olivo*, 374 F.Supp.2d at

5

>
> 548 n. 1; *see Lindberg*, 761 F.Supp.2d at 760; *Wlotkowski*, 267 F.R.D. at 217 (finding, under the "fairly lenient" standard at the first stage, plaintiff must "'submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists.'" (citation omitted)); *see also Myers*, 624 F.3d at 555 ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." (internal citation and citation omitted)). In determining whether to grant a motion at the first stage, a court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Rather, those tasks are addressed at the second stage." *Wlotkowski*, 267 F.R.D. at 217 (internal citation omitted).
>
> Plaintiffs may establish that putative plaintiffs are similarly situated by showing "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see Wlotkowski*, 267 F.R.D. at 217 (finding this a sufficient, but not necessary, showing). Plaintiffs may also establish the similarly situated requirement by showing they "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation to all plaintiffs." *O'Brien*, 575 F.3d at 585. "Showing a 'unified policy' of violations is not required, though." *Id*. at 584 (citation omitted). Plaintiffs need only show that their positions are similar, not identical, to putative plaintiffs. *Hipp*, 252 F.3d at 1217 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

*Jesiek*, 275 F.R.D. at 244-46 (footnotes omitted).

### B. "Affidavits" submitted by plaintiff

With respect to the "fairly lenient" evidentiary standard required for conditional certification, the Court in *Jesiak* observed that because the "[p]laintiffs were afforded limited discovery, they may not rest on the unsupported allegations in their complaint, but must put forth a 'modest factual showing' that the putative plaintiffs are similarly situated." *Id*. at 245. Here, there has been no discovery. Plaintiff seeks to establish the factual basis for conditional certification by filing two "affidavits".

Plaintiff set forth the following facts in his affidavit. Plaintiff was hired by defendant Salvatore Vitale and worked at the Leonard Street restaurant "from 2010 to 2018 at

various times." Torres Aff. (ECF No. 23-3, PageID.315). While plaintiff's amended complaint described his work at the restaurant from that of a general laborer (*see* Amend. Compl. at PageID.77), his affidavit stated that he was a kitchen supervisor and line cook (Torres Aff. at PageID.315). Plaintiff was paid at hourly rate of $12.00 when hired, with his final compensation being $15.00 per hour. Torres Aff. at PageID.315. Plaintiff worked an average of 75 hours per week. *Id*. "[Defendant] Pierson required me to keep two timecards and instructed me that there would [sic] to be no more than forty (40) hours reflected on each card." *Id*. "When added, both cards would reflect total hours worked." *Id*. Defendant Pierson would tally up the hours of one card and issue a check for those hours, and then tally up the hours of the other card and issue cash for those hours. *Id*. "At no times were tax withholdings deducted from the cash payments I received." *Id*. Defendant Pierson "began taking some of the time cards home with her" after being warned by a customer that he would report the Vitales to the IRS. *Id*. Finally, plaintiff stated that "[t]he two-card system used to compute my pay was the same system used for all other workers for Vitale's on Leonard" and that "I personally know that other workers at Vitale's on Leonard were also paid in cash and were not paid overtime for the hours they worked over 40 hours in a week." *Id*. at PageID.316.

Plaintiff also filed a one-page "affidavit" from another former employee, Jovan Whiteside, which set forth the following facts. Whiteside was a former employee of Vitale's located on Leonard Street in Grand Rapids, "from around Spring 2013 to approximately August 2015." Whiteside Aff. (ECF No. 23-4, PageID.318). Whiteside worked in "guest services" and "was responsible for dealing with takeout orders, cooking, cleaning and also preparing food in the kitchen." *Id*. Defendant Pierson set plaintiff's pay at approximately $12.50 per hour and he was earning approximately $13.50 per hour when his employment ended. *Id*. Whiteside stated that,

7

"[o]n average, I worked around forty five (45) to fifty (50) hours per workweek." *Id*. Employees at the location were not given adequate lunch breaks. *Id*. Whiteside was paid on a biweekly basis. *Id*. All of his hours worked over 40 in a workweek "were paid as straight time" and "[a]t no times were tax withholdings deducted from the cash payments I received." *Id*. Finally, Whiteside stated that he personally knew that other workers "[w]ere not paid overtime for hours they worked over 40 hours in a week" and "[w]ere instructed to keep their hours on two time cards, including Emilio Torres." *Id*.

As an initial matter, the papers filed by Torres and Whiteside are not affidavits. "An affidavit has been defined to be a declaration on oath, in writing, sworn to by a party before and attested by some person who has authority to administer oaths." *People to Use of Esper v. Burns*, 161 Mich. 169, 173, 125 N.W. 740 (1910). The papers signed by Torres and Whiteside neither contained a notary jurat vouching for the truthfulness of the signed record nor the signature of a notary. *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and *taken an oath or affirmation vouching for the truthfulness of the signed record*") (emphasis added). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was willfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), quoting *Clarke v. Wayne Circuit Judge*, 193 Mich. 33; 159 NW 387 (1916) (syllabus).[1]

---

[1] While the Court often sees *pro se* plaintiffs file unsworn papers as "affidavits," the Court expects attorneys to submit properly executed affidavits.

8

Assuming that plaintiff's counsel attempted to file these papers as unsworn declarations pursuant to 28 U.S.C. § 1746, this attempt also fails. Section 1746 provides in pertinent part that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Here, neither plaintiff nor Whiteside certified that their statements were "true and correct" as required by § 1746. Rather, both declarants diluted the statutory language by stating that the facts were true "to the best of [their] knowledge, information, and belief."[2] The Court does not view this diluted language as a declaration authorized by 28 U.S.C. § 1746. Such a statement extends beyond a person's knowledge and extends to matters within the person's "beliefs." *See generally, Totman v. Louisville Jefferson County Metro Government*, 391 Fed. Appx. 454, 464 (6th Cir. 2010) (statements based upon "beliefs" do not demonstrate personal knowledge). *See also Brown v. Smith*, No. 1:16-cv-235, 2019 WL 1598682 at *6 (March 4, 2019), R&R adopted, 2019 WL 1596826 (W.D. Mich. April. 15, 2019) (a statement that certain facts are "true and correct to the best of my knowledge, information and belief" does not comply with the

---

[2] Both declarants used the following language, "I, [name], state under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief." PageID.316, 318.

9

statutory requirements of 28 U.S.C. § 1746 and does not operate as an unsworn declaration as allowed under that statute).³  For these reasons, the Court finds that the two affidavits do not present any factual basis for plaintiff's motion.

The Court will consider the facts as set forth in the properly executed affidavits by defendants Salvatore Vitale and Belinda Pierson.  Defendant Vitale set forth the following facts in his affidavit.  Plaintiff approached Vitale in September 2017, at which time he "complained about how he was receiving paychecks," "demanded that he be paid in cash for any overtime or bonuses," and that Vitale ultimately agreed to the arrangement "when [plaintiff] threatened to quit, which would have left the Restaurant without a full-time Kitchen Manager."  Vitale Aff. (ECF No. 25-1, PageID.337-338).   In her affidavit, defendant Pierson stated that Mr. Whiteside was never asked to complete two time cards while employed by the restaurant, was never paid in cash, and was paid for overtime.  *See* Pierson Aff. (ECF No. 25-2, PageID.351); Payroll Journal (ECF No. 25-2, PageID.354-362).  In summary, plaintiff has failed to present evidence establishing at least a colorable basis for his claim that a class of similarly situated plaintiffs exists.  *See Jesiek*, 275 F.R.D. at 244-46.  Accordingly, plaintiff's motion to conditionally certify a collective action will be denied.

### C. Plaintiff's motion is legally insufficient

Even if plaintiff had submitted affidavits or declarations in proper form, there is no basis to conditionally certify a collective action based upon the facts set forth in those documents.

### 1. The class is either too broad or undefined

The gist of plaintiff's amended complaint is that defendants engaged in a common policy or plan which involved:  using two time cards; paying employees with checks for the regular

---

³ While the Court often sees *pro se* plaintiffs file "declarations" which do not conform with the requirements of 28 U.S.C. § 1746, the Court expects attorneys to submit properly executed declarations.

hours worked (as reflected on the first time card); paying employees at their regular hourly rates for overtime hours worked (as reflected on the second time card); and, paying the overtime hours in case without withholding income taxes. As discussed, plaintiff has submitted different definitions of the proposed class with respect to the timeframe and employers. Setting that matter aside, however, *none* of the proposed classes include a group of employees who were subject to the alleged common policy or plan. Accordingly, plaintiff's motion will be denied on this basis as well.

### 2. Plaintiff was not similarly situated to other employees at the restaurant because he was a supervisor

Defendants contend that plaintiff is not similarly situated because he was a kitchen supervisor as opposed to a general laborer. In this regard, defendant Vitale's affidavit stated that he re-hired plaintiff in March 2017 to serve as the "back of the house/Kitchen Manager" at the restaurant. Vitale Aff. (ECF No. 25-1, PageID.337). As a manager, plaintiff's duties included hiring and firing entry-level kitchen staff, setting wages for his direct reports and entry-level kitchen staff, setting work schedules for himself and direct reports, opening the building in the mornings, and overseeing morning cleaning crews. *Id*.

At this stage, plaintiff's role as a supervisor, in and of itself, is not a sufficient basis to deny conditional certification. While plaintiff performed management duties, it is undisputed that he was paid on an hourly basis like the other employees. Plaintiff only needs to show "that the proposed class 'suffer[s] from a single, FLSA-violating policy,' and that 'proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Myers v. Marietta Memorial Hospital*, 201 F. Supp. 3d 884, 895 (S.D. Ohio 2016), quoting *O'Brien*, 575 F.3d at 585 (6th Cir. 2009). For example, in *Myers*, the court found that while the individuals held a wide variety of positions (*e.g.*, registered nurses, patient care technicians, care coordinators,

11

emergency department technicians, licensed practical nurses, and medical assistants), they could form a class because all of the positions suffered from a single, FLSA-violating policy. *Myers*, 201 F. Supp. 3d at 895. Accordingly, the Court rejects this claim by defendants.

### 3. Plaintiff is not an appropriate representative for the proposed class

Defendants also contend that plaintiff is not an appropriate representative for the other employees in this collective action. Defendants cite no authority to support their contention that plaintiff is not an appropriate representative because he has filed two other lawsuits related to his employment at the restaurant. The fact that plaintiff filed other lawsuits against defendants does not affect the Court's core concern with identifying a representative for a collective action, *i.e.*, that the representative be similarly situated to the class members, whose FLSA causes of action accrued in approximately the same manner as those of the named plaintiff. *See O'Brien*, 575 F.3d at 585.

Nevertheless, the Court concludes that plaintiff's claim is not substantially similar to other employees identified in any of the proposed class definitions.

> The FLSA does not explicitly define the term "similarly situated," and neither has the Sixth Circuit. *Wade v. Werner Trucking Co.*, 2012 WL 5378311, at *4 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir.2009) [*abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, — U.S. —, 136 S.Ct. 663, 669 (2016)]). Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. "Thus, similarly situated class members under [the] FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis v. Huntington Nat'l Bank*, 789 F.Supp.2d 863, 868 (S.D. Ohio 2011). In short, at this first stage, "the plaintiff must show only that 'his position is similar, not identical to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). The Court considers that issue "using a fairly lenient standard, and typically [the determination] results in conditional certification of a representative class." *Id.* (quotation omitted).

12

*Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483-84 (S.D. Ohio 2014).[4]

Plaintiff's claim is different from the other members of the proposed class. In his affidavit, defendant Vitale stated that plaintiff approached Vitale in September 2017, at which time plaintiff "complained about how he was receiving paychecks," "demanded that he be paid in cash for any overtime or bonuses," and that Vitale ultimately agreed to the arrangement "when [plaintiff] threatened to quit, which would have left the Restaurant without a full-time Kitchen Manager." Vitale Aff. (ECF No. 25-1, PageID.337-338). None of the class definitions include employees who negotiated cash payments for overtime and bonuses. Furthermore, as discussed *supra*, the proposed class does not include employees who were subject to the common policy or plan of using multiple time cards and paying overtime in cash. Accordingly, plaintiff's motion will be denied on this additional basis.

## IV. Rule 16 scheduling conference

As the parties are aware, this case and the companion case of *Torres*, 1:18-cv-1088, are scheduled for a joint Rule 16 scheduling conference on June 13, 2019. If plaintiff is able to cure the deficiencies in the motion for conditional class certification by re-defining the class and presenting an adequate factual basis for certification and plaintiff intends to re-file his motion for conditional class certification, then it would be helpful for the parties to discuss that issue before the scheduling conference, so that the Court can enter an appropriate scheduling order.

---

[4] The full citation for the *Comer* case is *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

## V. Conclusion

For the reasons stated above, plaintiff's motion for conditional certification of collective action (ECF No. 22) is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated:  May 16, 2019                                          /s/ Ray Kent
                                                              United States Magistrate Judge